UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
BULLSEYE RESTAURANT, INC., d/b/a THE
SCENE, and DANIEL BRENNAN

**MEMORANDUM &
ORDER**

Plaintiffs,                     17-CV-2996 (DRH)(GRB)

-against-

JAMES RIVER INSURANCE COMPANY

Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff**
John L. Juliano, P.C.
39 Doyle Court
East Northport, New York, 11731
By:     Jonathan C. Juliano, Esq.

**For Defendant:**
Wade Clark Mulcahy LLP
180 Maiden Lane, Suite 901
New York, New York 10038
By:     Christopher J. Soverow, Esq.


**HURLEY, Senior District Judge:**

Plaintiffs Bullseye Restaurant, Inc. d/b/a The Scene ("Bullseye") and Daniel

Brennan ("Brennan") (collectively "Plaintiffs") commenced this action seeking a

declaratory judgment that defendant James River Insurance Company ("Defendant" or

"JRIC") is obligated to indemnify and defend it in connection with an action entitled *Van*

*Derham v. Bullseye Restaurant*, E.D.N.Y. Civil Action No. 16-490 (the "Underlying

Action"). Presently before the Court is Defendant's motion for summary judgment

dismissing Plaintiffs' complaint and declaring that JRIC owes "no duty to provide

coverage to the Plaintiffs or any other party[1] with respect to [claims] asserted in the lawsuit" Van Derham v. Bullseye Rest. Inc. (E.D.N.Y. Civil Action No. 16-490) (the "Underlying Action"). (Bullseye's Notice of Motion (DE 18)). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the parties' 56.1 Statements and are undisputed unless otherwise noted.

## I.        History of Bullseye and Insurance Coverage By JRIC

Bullseye operates a bar restaurant that also functions as a "gentlemen's club" under the name "the Scene," which opened in 2001. Bullseye Media was the initial operating entity for the Scene.  In 2010 Angelo Abbatiello ("Abbatiello") arranged for defendant Bullseye's incorporation and began operating the business, with Abbatiello owning all the stock. In 2014 Brennan became the owner of Bullseye and as such oversaw its business operations, including promotions, except for the period from approximately May 2015 through February or March 2016 when he took a leave of absence for personal reasons. During Brennan's leave of absence, Abbatiello assumed all of Brennan's responsibilities. When Bullseye's then current insurer went out of business, Abbatiello engaged the Robert S. Fede Insurance Agency to obtain coverage for Bullseye. (Pls.' 56.1 Resp. at ¶¶ 8-22.)

Thereafter, JRIC issued a Liquor Liability and Commercial General Liability to Bullseye under Policy Number 00067929-0 (the "Policy"), initially effective 8/3/2015 to 8/3/ 2016. However, JRIC, by notice dated September 28, 2015 and admittedly received

---

[1]  The notice of motion does not specify who the "other party" to the instant action might be.

by Bullseye, cancelled the Policy effective October 1, 2015 for nonpayment of premiums. (Pls.' 56.1 Resp. at ¶¶23-29.) The Court notes that while Plaintiffs dispute that the Policy period ended on October 1, 2015, they do not cite any record evidence in support thereof and do not dispute that JRIC cancelled the policy effective October 1, 2015. (*See* i*d.* ¶¶ 26, 27). They merely assert that Bullseye paid "approximately $6375.00 representing "advance premium' for the policy and therefor at the very lease [sic] the [] policy was in effect for a portion of the time period" during which the acts giving rise to the claims in the Underlying Action occurred. (Pls.' Opp. Mem. at 2.)

## II. The Underlying Action and History of the Claim

On February 1, 2016,[2] Katarina Van Derham ("Van Derham"), Cielo Jean Gibson ("Gibson"), Gabby Jean Saucedo ("Saucedo"), Mariana Davalos ("Davalos"), and Chantel Zales ("Zales") filed the Underlying Action as plaintiffs against Bullseye and Brennan. According to the complaint therein, the plaintiffs are famous models whose images Bullseye and Brennan used, without their consent or payment therefor, as part of Bulleye's promotions on social media, which images created the appearance that those plaintiffs either worked as dancers at the Scene or otherwise endorsed the business when in fact they neither worked at or endorsed the Scene. The complaint in the Underlying Action alleges the following causes of action: (1) False Endorsement under § 43 of the Lanham Ac, 28 U.S.C. §1125 (a)(1); (2) invasion of privacy under N.Y. Civ. Rts. Law §§ 50-51; (3) deceptive trade practices under N.Y. Gen. Bus. Law § 349; (4) defamation and defamation per se; (5) negligence; (6) conversion; (7) unjust enrichment; and (8) quantum meruit. Attached to the complaint in the Underlying Action are the following promotions:

---

[2] Although the parties agree that the commencement date of the Underlying Action is February 1, 2016, according to the docket therein the complaint was filed on January 31, 2016.

(1) a Facebook post for the Scene allegedly depicting Van Derham, published on December 1-17, 2015; (2) a Facebook post published on December 14, 2015, allegedly featuring Gibson; (3) a Facebook post published on October 19, 2015, allegedly featuring Saucedo; (4) an image allegedly featuring Davalos, published on the Scene's webpage, undated, and on its Facebook page, published on September 9, 12, 13, and 14, 2015; and (5) a Facebook post published on October 7, 2015, allegedly featuring Zales. According to the docket in the Underlying Action, Bullseye and Brennan were served with process on March 3, 2016. (Pls.' 56.1 Resp. at ¶¶ 30-33; *Van Derham v. Bullseye Restaurant Inc.*, Civil Action No. 16-490 (E.D.N.Y.) at DE 6.)

Bullseye and Brennan instituted a third party action against Neo Producttions Ltd, Michael DelRosso, Brian Gordon and Envato Pty. Ltd., the promoters and/or advertisers hired by Bullseye who it claims were responsible for construction of the advertising, and the management of Bullseye' website and social media posts. Del Rosso asserted as an affirmative defense that he did not produce the promotions at issue but purchased images from a vendor known as Envato Ltd. d/b/a PhotoDune.net ("Envato") and provided invoices as support. Although Bullseye had sued Envato in the Underlying Action, it stipulated to their dismissal without prejudice in or about November 2016; according to Plaintiffs they stipulated to the dismissal after "it was discovered that none of the images at issue in the [Underlying Action] were images held by and licensed to Envato." Subsequent to undertaking advertising efforts on behalf of Bullseye, Nuzzi, whom the parties agree was responsible for at least some of the promotion at issue in the Underlying Action, died. (Pls.' 56.1 Resp. at ¶77-80.)

Written notice of the Underlying Action was provided by Plaintiffs to JRC on November 1, 2016.[3] JRIC acknowledged receipt of the claim on November 8, 2016 and asked Plaintiffs to provide any additional information. (Pls.' 56.1 Resp. at ¶¶ 34-35.)

## III. JRIC Disclaims Coverage

On December 7, 2016, JRIC disclaimed coverage for the claims in the underlying Action.[4] Citing various policy provision as support therefor, the disclaimer stated (1) it was denying coverage "for any claims arising from any promoting published either before or after the effective dates of the Policy;" (2) reserving "the right to deny coverage to the extent [its] rights were prejudiced by the late notice of claim provided by the Plaintiffs;" (3) denied coverage "based on the RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION;" (4) denied coverage "based on the FIDUCIARY EXCLUSION;" (5) reserved the right to deny coverage to Brennan to the extent he did not qualify as an insured;"[5] and (6) reserved the right to deny coverage based on the "Knowing Violation of Rights of Another" and "Materials Published with Knowledge of Falsity" exclusions.[6] (Pls.' 56.1 Resp. at ¶¶38-46 (capitalization in original).)

---

[3] The Court notes that although Plaintiffs contend that notice of the Underlying Action "was made to Plaintiff's [sic] broker, Robert S. Fede Insurance Agency and IPFS Corporation ('IPFS') earlier" (Pls.' 56.1 at ¶ 34) no supporting reference to the record is provided in support thereof.

[4] The Court notes that the same disclaimers and reservation contained in the text are cited as affirmative defenses in JRIC's Answer.

[5] JRIC has withdrawn this reservation and concedes that Brennan qualifies as an insured. ((Pls.' 56.1 at ¶ 44.)

[6] This last reservation is not addressed in the current motion.

## IV.    Bullseye's Advertising Practices and Records

Prior to his leave of absence, Brennan oversaw all promotions, including arranging for promotions of guest dancers, pursuant to a contact and with their permission, in newspapers. (Pls.' 56.1 Resp. at ¶16.)

During Brennan's leave of absence, Abbatiello oversaw promotions. Abbatiello hired Anthony Nuzzi (d/b/a/ Neo Productions, Ltd.), Del Rosso, and Gordon, whom he met through their patronage of Bullseye to prepare and place advertising and manage Bullseye's website and social media posts. Plaintiffs deny any knowledge that these advertisers were doing anything illegal or in violation of statute in connection with Bullseye's promotions or with use of images in those promotions. According to Abbatiello's deposition testimony neither Nuzzi nor Del Rosso provided advanced copies of promotion prior to publication; he could not recall if Gordon provided advance copies for approval prior to publication. (Pls.' 56.1 Resp. at ¶17, 53-57; Pls.' 56.1 Counterstatement at ¶ 2-4, 9-10.)

During discovery JRIC demanded copies of any and all communications between Bullseye or its representatives and any advertiser.  In response Plaintiffs produced invoices and emails regarding the activities of DelRosso and Gordon, including at least one email sent directly to Abbatiello. Although Plaintiff produced these documents in discovery in this matter, they were originally produced by DelRosso in the Underlying Action as part of his initial disclosures pursuant to Fed. R. Civ. P. 26(a). After a search of their various email accounts, Plaintiffs did not find any emails from DelRosso, Gordon, or Nuzzi to Bullseye, Brennan or Abbatiello. No written communications between Bullseye or its representatives and Nuzzi were produced by Plaintiffs to JRIC; according

to Plaintiffs they produced all the documents that were in their possession. (Pls.' 56.1 Resp. at ¶¶ 56-63.)

Bullseye and Brennan instituted a third party action against the promoters and/or advertisers hired by Bullseye who were responsible for construction of the advertising, and the management of Bullseye' website and social media posts. Del Rosso asserted as an affirmative defense that he did not produce the promotions at issue but purchased images from a vendor known as Envato Ltd. d/b/a PhotoDune.net ("Envato") and provided invoices as support. Although Bullseye had sued Envato in the Underlying Action, it stipulated to their dismissal without prejudice in or about November 2016; according to Plaintiffs they stipulated to the dismissal after "it was discovered that none of the images at issue in the [Underlying Action] were images held by and licensed to Envato." Subsequent to undertaking advertising efforts on behalf of Bullseye, Nuzzi, whom the parties agree was responsible for at least some of the promotion at issue in the Underlying Action, died. (Pls.' 56.1 Resp. at ¶77-80.)

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When making this determination, a court must view all facts "in the light most favorable" to the

non-movant, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586-87), and "may not rely on conclusory allegations or unsubstantiated speculation," *Id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of

proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210-11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.' " *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.     General Principles of Regrading Construction of an Insurance Contract

"The construction of an insurance contract is ordinarily a matter of law to be determined by the court." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc*., 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003), *aff'd*, 88 F. App'x 441 (2d Cir. 2004). Policy terms are ambiguous if they are "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Olin Corp. v. Am. Home Assur. Co.,* 704 F.3d 89, 99 (2d Cir. 2012) (internal quotation marks omitted). On the other hand, "[p]olicy terms are unambiguous where they provide 'a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.' " *Liberty Mut. Ins. Co. v. Fairbanks Co*., 170 F. Supp. 3d 634, 642 (S.D.N.Y. 2016)

(quoting *Olin Corp.*, 704 F.3d at 99). Courts must interpret unambiguous contract provisions according to their "plain and ordinary meaning," *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2011), and "give effect to the intent of the parties as expressed in the clear language of the contract*." Fed. Ins. Co., v. American Home Assur. Co.,* 639 F.3d 557, 567 (2d Cir. 2011) (internal quotation marks omitted).

"Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate . . . . Only where the language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (internal quotation marks and citations omitted). If a contract term is "susceptible to at least two reasonable interpretations," summary judgment is inappropriate because the meaning of an ambiguous contract term is "generally an issue of fact, requiring the trier of fact to determine the parties' intent." *U.S. Naval Inst. v. Charter Commc'ns, Inc.,* 875 F.2d 1044, 1048 (2d Cir. 1989) (internal citations omitted). In contrast, if the contractual terms are unambiguous, the dispute is properly resolved on summary judgment, and the court must "give effect to the intent of the parties as expressed in the clear language of the contract." *Mount Vernon Fire Ins. Co. v. Belize N.Y., Inc*., 277 F.3d 232, 236 (2d Cir. 2002) (internal quotation marks and citation omitted).

Finally, "[w]hen an exclusion clause is relied upon to deny coverage, the burden rests upon the insurance company to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." *Quaco v. Liberty Insur. Underwriters Inc.,*

2018 WL 4572249, at *4 (S.D.N.Y. Sept. 23, 2018) (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444, 749 N.Y.S.2d 456, (2002). Policy exclusions are to be strictly and narrowly construed and are not to be extended by interpretation or implication. *East Ramapo Cent. Sch. Dist. v. New York Schools Ins. Reciprocal*, 150 A.D.3d 683, 686 (2d Dept. 2017) (citing *Pioneer Tower Owners Assn. v. State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 307, 880 N.Y.S.2d 885; *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d at 311, 486 N.Y.S.2d 873).

### III.    The Parties' Contentions

According to JRIC, "[c]overage is barred for the claims of all but one of the five Underlying Plaintiffs by virtue of the date of publication of the advertisements" as they fall outside the coverage dates of the Policy. In addition, the claims in the underlying action fall squarely within the exclusion barring coverage for any advertising injury arising from the violation of any statute or law and within the fiduciary exclusion. Lastly, it asserts coverage is barred as a matter of law due to Plaintiffs failure to provide timely notice of the Underlying Action.

In response, Plaintiffs argue that JRIC did not suffer prejudice as a result of any late notice. They further assert that as some of the claims arguably arise from covered events, JRIC is required to defend the entire action. Lastly, they maintain that the exclusions relied on by JRIC are not applicable to bar the duty to defend and/or to indemnify.

Before addressing the arguments raised, it is appropriate to set forth the relevant Policy provisions. It is to this task that the Court now turns.

## II.    The Relevant Policy Provisions.

Section1 of the Policy entitled "Coverages" is divided into three parts, only one of

is relevant here: Coverage B entitled "Personal and Advertising Injury Liability."[7]

"Personal and Advertising Injury Liability" coverage applies to "personal and

advertising injury" caused by an offense arising out of the insured's business "but only if

the offense was committed in the 'coverage territory' during the policy period." (Policy[8]

at Section 1B(1).) The policy contains the following definition of such injury:

> "Personal and advertising injury" means injury including consequential "bodily
> injury", arising out of one or more of the following offenses:
> a.    False arrest, detention, or imprisonment;
> b.    Malicious prosecution;
> c.    The wrongful eviction from, wrongful entry into, or invasion of the right
>       of private occupancy of a room, dwelling or premises that a person
>       occupies, committed by or on behalf of its owner, landlord or lessor;
> d.    Oral or written publication, in any manner, or material that slanders or
>       libels a person or organization or disparages a person's or organization's
>       goods, products or services;
> e.    Oral or written publication, in any manner of material that violates a
>       person's right of privacy;
> f.    The use of another's advertising idea in your "advertisement" or
> g.    Infringing upon another's copyright, trade dress or slogan in your
>       "advertisement".

(*Id.* Section V(14).) Among other things, the Policy excludes coverage for personal and

advertising injury that is (1) caused by the knowing violation of the rights of another;  (2)

arises out of (a) materials published with knowledge of falsity or (b) materials published

prior to the policy period. It also contains the following exclusion provision:

> **Distribution of Material in Violation Of Statutes**
> "Personal and advertising injury" arising directly or indirectly out of any
> action or omission that violates or is alleged to violate:

---

[7] Coverage A is entitled "Bodily Injury and Property Damage Liability" and only covers injury or loss of
tangible property; Coverage C is entitled "Medical Payments."
[8] The Policy is Ex. A to the Soverow Declaration.

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
(2) the CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
(3) Any statute, ordinance, or regulation, other than the TCPA or CAN-Spam Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

(*Id.* Section 1(B) (2) (a)-(c), & (p) (emphasis in original).)[9]

## II.     Coverage Dates

Relying on the coverage dates, i.e., August 3, 2015 to October 1, 2015, JRIC argues that coverage is barred for the claims of all but one of the plaintiffs in the Underlying Action. The Court agrees.

The Policy clearly states that it covers only offenses committed during the policy period. Here, the claims of four of the five plaintiffs in the underlying action, viz. Van Derham, Gibson, Saucedo and Zales, relate to Facebook posts occurring after the policy was cancelled. As noted earlier, there is no record evidence to which the Court was directed to support extending the policy period past the date the Policy was cancelled by JRIC. Thus, JRIC is entitled to dismissal of Plaintiffs' claims for coverage as to those four plaintiffs and a declaration that there is no coverage as to the claims of these four plaintiffs in the Underlying Action.

However, at least one of the alleged claims of Davalos, i.e., the publication of her image on Bullseye's Facebook page on September 9, 12, 13, and 14, 2015, occurred during the policy period. As to Davos' claim regarding the undated posting of her image

---

[9] Contrary to the representation in Defendant's memorandum in support, see p. 8, the policy at issue does *not* contain an exclusion for personal and advertising injury that violates or is alleged to violate the Fair Credit Reporting Act and the Fair and Accurate Credit Transaction Act. *See* Policy at 1(B)(2)(p).

on Plaintiff's webpage, there is at least the possibility of coverage given the lack of a publication date.

As the policy coverage dates do not preclude coverage for Davos' claims, the Court will now proceed to address the remainder of JRIC's arguments.

## III. The Distribution of Materials in Violation of Statute Exclusion

Relying upon the third subpart of the exclusion entitled "Distribution of Materials in Violation Of Statute" ("the Statutory Exclusion"), JRIC argues there is no coverage for the claims asserted in the Underlying Action. According to JRIC as this exclusion "bar[s] coverage for any advertising injury arising from a federal or state law" and the common element of all the claims asserted in the underlying action is that their images were misappropriated for give the false impression that they worked or endorsed The Scene and as they did not and were not paid for their images, Bullseye violated federal and state laws. (Def.'s Mem. at 7-8.) The interpretation proffered by JRIC, which would preclude coverage for any violation of state or federal law, appears to be too broad.

Given that this exclusion first references the TCPA and CAN-SPAM Act of 2003, a brief discussion of those statutes is in order.

In general, the CAN-SPAM Act, 15 U.S.C. § 7701 et seq., prohibits the transmission of commercial electronic mail messages to a protected computer which include header information or subject headings that are materially misleading. *See Yahoo! Inc. v. XYZ Companies*, 872 F. Supp. 2d 300, 304 (S.D.N.Y. 2011).

The TCPA was enacted "to protect consumers from unrestricted telemarketing, which [Congress] determined could be an intrusive invasion of privacy." *Reyes v. Lincoln Auto. Financial Servs.*, 861 F.3d 51, 55 (2d Cir. 2017) (internal quotation marks omitted).

To address this problem, the act prohibits, among other things, "the making of calls 'using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii); *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012). To prove a violation of the TCPA, a plaintiff must show that a call was placed to a cell or wireless phone by the use of any automated dialing system without the prior consent of the recipient. *See Echevvaria v. Diversified Consultants, Inc.,* 2014 WL 929275, at *4 (S.D.N.Y. Feb. 28, 2014).

The common denominator of both these statutes is that they regulate only communications or information distributed, for want of a better term, electronically. The statutory causes of action asserted in the Underlying Action, in contrast, are not so limited to electronic communications. *See, e.g.* 15 U.S.C. § 1125(a)1) (prohibiting the use in commerce of "any" false or misleading description which misrepresents the nature, characteristic, qualities or origin of goods, services or commercial activities); N.Y. Civ. Rts. Law § 51 (Creating a private right of action for "[a]ny person whose name, portrait picture or voice is used within this state for advertising purposes or for the purpose of trade without the written consent first obtained . . . ."); N.Y Gen. Bus. L §349(a) (declaring "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York "unlawful.")

As the Statutory Exclusion follows the exclusions specifically referencing the TCPA and the CAN-SPAM Act, a possible interpretation is that the Statutory Exclusion applies not to all claims arising from federal and state statutes but only those that *similarly* "prohibit[] or limit[] the sending, transmitting, communicating or distribution of

material or information." *Cf. Tverskoy v. Ramaswami*, 83 A.D.3d 1195, 920 N.Y.S.2d 803, 806 (3d Dep't 2011) ("[U]nder the rule of statutory construction known as ejusdem generis, such a catch-all provision following a list of specific items in a statute will generally be interpreted to include only items of the same type as those listed." (emphasis added)). In other words, one possible interpretation of the Statutory Exclusion is that is covers only statutes which similarly are limited to the electronic transmission of communications and information.

Additionally, a "contract should be construed so as to give full meaning and effect to all of its provisions." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co*., N.A., 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation marks, citation, and alterations omitted). In determining whether a contract provision is ambiguous "the court must read the disputed provision within the context of the entire agreement and must safeguard against adopting an interpretation that renders another provision superfluous." *Quinio v. Aaia,* 344 F. Supp. 3d 464, 471 (E.D.N.Y. 2018) *(*citing *Sayers v. Rochester Telephone Corp.,* 7 F.3d 1091, 1094 (2d Cir. 1993). To give the Statutory Exclusion the effect that JRIC urges would render superfluous other exclusions such as the exclusion for personal and advertising injury arising out of "a criminal act" or the infringement of copyright, patent, trademark  . . . or other intellectual property rights." Crimes are creatures of statute and intellectual property rights are governed, at least in some instance, by statutes that broadly speaking prohibit or limit the distribution of material or information such as the Copyright Act, and the Lanham Act.

When insurance contracts contain an exclusion provision, " '[t]he insurer generally bears the burden of proving that the claim falls within the scope of an exclusion

. . . [by] establish[ing] that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.' " *Seneca Ins. Co. v. Kemper Ins. Co.*, 2004 WL 1145830, at *10 (S.D.N.Y. May 21, 2004) (quoting *Vill. of Sylvan Beach v. Travelers Indem. Co*., 55 F.3d 114, 115–16 (2d Cir.1995)), *aff'd*, 133 F. App'x 770 (2d Cir. 2005) (summary order); *see also Seaboard Sur. Co. v. Gillette Co*., 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984) (stating that exclusions "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction" (internal citation omitted)). An exclusion from coverage must be " 'specific and clear.' " *Essex Ins. Co. v. Pingley*, 41 A.D.3d 774, 776, 839 N.Y.S.2d 208 (2d Dept. 2007) (quoting *Seaboard Sur. Co. v. Gillette Co*., 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873 (1984)), and any ambiguity must be construed most strongly against the insurer, *see, e.g., Belt Painting Corp. v. TIG Ins. Co*., 100 N.Y.2d at 383, 763 N.Y.S.2d 790 (2003). Given that the Statutory Exclusion is subject to a reasonable interpretation other than that proffered by JRIC, its motion for summary judgment is denied to the extent it relies upon this exclusion.

## IV.    Late Notice

Pursuant to N.Y. Insurance Law § 3420(a)(5) an insurer may not deny coverage under a liability policy based on the failure of the insured to give timely notice of claim unless the insurer suffers prejudice as a result of the delay. An insurer is prejudiced if "the failure to timely provide notice materially impairs the ability of the insurer to investigate or defend the claim," *Id.* § 3420(c)(2)(C). If notice of the claim was given to the insurer within two years of the time required under the policy, then the burden of demonstrating prejudice lies with the insurer. *Id.* § 3420(c)(2)(A). General assertions of

prejudice, such being deprived of the opportunity to participate in phases of an underlying litigation are insufficient to demonstrate prejudice. "While [the insurer] need not show there would have been a different outcome, it must identify something it could have done differently in discovery, at summary judgment, or at mediation, or identify different defenses or strategies it could have pursued." *Harleysville Worchester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90, 94 (2d Cir. Feb. 1, 2019).

Here, JRIC claims that the "nine month delay [measured from the time the action was commenced] in providing it with notice prejudiced it" as Bullseye "made no effort to preserve their records" relevant to the claims in the Underlying Action and thus the plaintiffs in the Underlying Action "are well positioned to move for inferences against interest due to spoliation of evidence" prejudicing JRIC's rights. (Def.'s Mem. at 11-12.) The Court is underwhelmed by this argument.

Initially, the Court notes that the starting point of any delay is not measured from when the Underlying Action was commenced but rather from the date Plaintiffs were served with the complaint in the Underlying Action, absent any evidence they had earlier knowledge of the suit. According to the return of service filed in the underlying action, that did not occur until March 3, 2016. *See Van Derham v. Bullseye Restaurant Inc.,* Civil Action No. 16-490 (E.D.N.Y.) at DE 6.) It is from that date that any delay is measured.

Here, there was a delay of eight months in providing notice. Such a delay is untimely as a matter of law, but the question remains as to any resulting prejudice. *New York State Elec. & Gas. Corp. v. Century Indem. Co.,* -- F. App'x --, 2019 WL 1817781, *2 (2d Cir. Apr. 25, 2019) (holding delay from July to November untimely as a matter of law) (citing *Am. Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 86 (2d Cir. 1993).)

Turning to the question of prejudice, JRIC's claim of such is, at the present time, mere conjecture. No spoliation motion has been made, no less granted, in the Underlying Action. Moreover, any such motion would have to be supported by, among other things, evidence that Bullseye destroyed documents at a time when it was obligated to institute a litigation hold. *See generally, Pyskaty v. Wide World of Cars, LLC*, 2019 WL 917153, *7 (S.D.N.Y. Feb. 25, 2019) ("A party seeking spoliation sanctions must demonstrate: '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'") (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004)). That the documents that Bullseye produced in this litigation came from discovery it received in the Underlying Action does not necessarily equate to Bullseye having destroyed records after it became aware of the Underlying Action. It is possible that relevant documents were disposed of before the obligation to impose a litigation hold arose.

Accordingly, JRIC is not entitled to summary judgment on the grounds that the notice of claim from Bullseye was untimely to the prejudice of JRIC.

## IV.    The Fiduciary Exclusion

JRIC maintains that the claims of misappropriation and conversion giving rise to a false endorsement fall within all three sub-parts of the "Fiduciary Exclusion" of the Policy. That exclusion reads:

> This policy does not apply to any claim arising out of
> 1.      Coercion, conversion or misappropriation of other's funds or property;

2.      Any dishonest, fraudulent, criminal, malicious acts or omissions of the insured, partner or employee or any person for whom you are legally responsible; or
3.      Any activities or operations performed in the capacity of a fiduciary.

Policy (DE 18-2 at p. 60.)

Turning first to the "conversion or misappropriation" subpart, it would appear that in the event such a claim were to succeed, coverage would not exist. Other than disputing that the merits of the claim, Plaintiffs do not contend otherwise. As to the second subpart, there is a question of fact, based on the materials submitted on this motion, as to whether any of the acts or omission alleged were "dishonest, fraudulent, criminal or malicious," as opposed to negligent.

With respect to the third and final subpart, JRIC asserts that as Abbatiello's activities were performed in the capacity of a fiduciary as he was not only "the manager of Bullseye and a former owner, but he was acting on behalf of the sole stock holder [sic] of Bullseye when overseeing the promotions at issue in the Underlying Actions." (Def.'s Mem. at 9). However, it does not cite any caselaw to support that proposition.

To determine whether a fiduciary relationship exists between two parties, "New York law inquires whether one person has reposed trust or confidence in the integrity and fidelity of another who thereby gains a resulting superiority or influence over the first." *Teachers Ins. & Annuity Assoc. of Am. v. Wometco Ent., Inc.*, 833 F. Supp. 344, 349–50 (S.D.N.Y.1993) (citations omitted). And the law in New York is that no fiduciary relationship arises from an employment relationship. *See BGC Partners, Inc. v. Avison Youn (Canada) Inc,* 75 N.Y.S.3d 1 (1st Dept. 2018). Here, the record permits an inference

that Abbatiello was merely an employee. Accordingly, JRIC is not entitled to summary judgment to the extent it relies upon the fiduciary exclusion.

## CONCLUSION

For the reasons set forth above, JRIC's motion is granted to the extent that it is entitled to a declaration that JRIC owes no duty to provide coverage to the Plaintiffs for the claims asserted by Van Derham, Gibson, Saucedo and Zales in the Underlying Action, but otherwise denied.

**SO ORDERED.**

Dated: Central Islip, New York       _s/ Denis R. Hurley
     May 8, 2019                    Denis R. Hurley
                                      United States District Judge